UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
M.V. Music *et al*,

                            Plaintiffs,

          - against -

V.P. Records Retail Outlet, Inc. *et al*,

                            Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-5524 (PKC) (MMH)

PAMELA K. CHEN, United States District Judge:

Plaintiffs MV Music and Clifford Ray Smith (a/k/a "Mr. Vegas") brought this lawsuit for copyright infringement, breach of contract, unjust enrichment, and unfair competition. Before this Court is Plaintiffs' motion for a preliminary injunction seeking to enjoin Defendants from using Mr. Vegas's sound, image, and likeness during this action, or alternatively, requiring Defendants to hold monies derived from Mr. Vegas's music, image, and likeness in escrow. For the reasons stated on the record at the show-cause hearing on October 27, 2022, and as supplemented herein, Plaintiffs' motion is denied.

**BACKGROUND**

**I.   Findings of Fact**

Pursuant to Federal Rule of Civil Procedure 52(a)(2), the Court makes the following findings of fact in support of its denial of a preliminary injunction against Defendants.[1] Fed. R. Civ. P. 52(a)(2); *see also Smith v. Everson*, 266 F. App'x 58, 58 (2d Cir. 2008) ("Rule 52(a) . . .

---

[1] The Court's findings are largely based on the parties' presentations at the October 27, 2022, show-cause hearing. Because an official transcript of the hearing has not yet been finalized (*see* Dkt. 59), the Court refers to evidence, arguments, and representations made at the show-cause hearing without citation.

requires district courts to 'state the findings [of fact] and conclusions [of law]' when granting or refusing an interlocutory injunction.").

Plaintiff Clifford Ray Smith, professionally known as "Mr. Vegas," is a successful reggae singer from Jamaica. (Affirmation of Plaintiffs' Counsel ("Pls. Aff."), Dkt. 41-1, ¶ 2.) Plaintiff MV Music is a Florida-based limited liability company that collects royalties for Plaintiff Vegas. (Am. Compl., Dkt. 19, ¶¶ 30, 32.)

Greensleeves Records Limited ("Greensleeves") is a British record label. (*Id.* ¶ 39.) Since at least the 1990s, Plaintiff Vegas has had recording agreements with Greensleeves to license the master recording for some of his songs, including his *Head High* album, which includes the eponymous song. (Declaration of Christopher Chin in Opposition to Preliminary Injunction Motion ("Chin Decl."), Dkt. 43, ¶ 5; *see also* Chin Decl., Ex. B., Dkt. 43-2, at ECF[2] 4.)

Defendants in this case are V.P. Records Retail Outlet, Inc., V.P. Music Group Inc., and V.P. Music. (Am. Compl., Dkt. 19, ¶¶ 1, 33.) Plaintiffs allege that Greensleeves was acquired by Defendant V.P. Records Retail Outlet, Inc. in 2008. (*Id.* ¶ 39.) Christopher Chin is the President of V.P. Records Retail Outlet, Inc., and President of V.P. Music. (Chin Decl., Dkt. 43, at ¶¶ 2–3.) At the show-cause hearing, Defendants' counsel introduced Chin as an officer for all three Defendants. Chin also acknowledged in his affidavit that he is a managing member of Greensleeves, and of Greensleeves Publishing Limited. (Chin Decl., Dkt. 43, at ¶¶ 2–3.) Defendants did not contest in their briefing or at the show-cause hearing that Greensleeves was acquired by at least one of Defendants. Plaintiffs allege that Defendants are assignees-in-interest of Greensleeves. At this stage of the litigation, without the benefit of discovery or relevant

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

testimony at the show-cause hearing, the Court cannot determine the exact ownership structure between Defendants and Greensleeves, or whether Defendants are assignees of Greensleeves. However, the Court finds by a preponderance of the evidence that one of the defendant corporations acquired Greensleeves.

Plaintiffs allege that since the acquisition of Greensleeves, Mr. Vegas has not received royalties from Greensleeves for the disputed works. (Pls. Aff., Dkt. 41-1, ¶ 4.) Plaintiffs further allege that Defendants infringed Plaintiffs' copyrights for five songs performed by Mr. Vegas: *Heads High*, *Stage One*, *Gallis*, *Sucky Ducky*, and *Hot Wuk/Hot F*ck*.[3] The parties dispute whether Plaintiffs have ownership rights over some of the recordings that are the subject of this motion. (*See* Chin Decl., Dkt. 43, ¶¶ 5–13; *see also* Pls. Aff., Dkt. 41-1, ¶¶ 5–6.)

Plaintiffs applied for sound recording copyrights with the U.S. Copyright Office for *Head High* and *Gallis* on November 8, 2021, and November 9, 2021, respectively. (*See* Dkt. 41-3, at ECF 16–20.) The registrations for these two songs were granted on December 9, 2021, the same day that Plaintiffs filed the Amended Complaint. (*Id.*) Plaintiffs attached as exhibits to their motion papers several other copyright registrations that pre-date November 2020 for the sound recordings for *Kill Har Wid Di No* (Copyright No. SR 797-312), *Bruck It Down (Soca Remix)*

---

[3] At the show-cause hearing, the Court directed Plaintiffs to state clearly on the record exactly which songs were in dispute for the purposes of their copyright claim. The Court found it necessary to clarify which songs were in dispute because Plaintiffs have been circumspect about the set of disputed works. In fact, this circumspection has apparently led Defendants to be confused about which songs are in dispute. (*See* Chin Decl., Dkt. 43, at ¶¶ 5–13 (describing *Heads High*, *Hot Gal Today*, and *Gallis*, as "[t]he recordings which are the subject of this Motion").)

In response to the Court's questions at the show-cause hearing, Plaintiffs' counsel noted that they "did not want to commit" to only raising copyright claims on these five songs mentioned in connection with the copyright infringement cause of action in the Amended Complaint, noting that there are other "catchall" phrases in the Amended Complaint. Yet, the Court can only evaluate whether Plaintiffs have met their high burden on this motion based on those works that Plaintiffs have affirmatively asserted were the subject of the copyright infringement.

3

(Copyright No. SR 768-853), *Party Tun Up* (Copyright No. SR 768-852), and *My Jam* (Copyright No. SR 768-855).[4] Plaintiffs acknowledged at the show-cause hearing that these copyrights do not correspond to the disputed works, except that Plaintiffs asserted that Copyright No. SR 797-312, with an effective date of July 27, 2018, for *Kill Har Wid Di No* is the copyright for *Heads High*, because the songs are versions of one another. However, Defendants argue that the two songs are distinct, and Plaintiffs have not provided any contrary evidence; therefore the copyright for *Kill Har Wid Di No* cannot be considered the copyright for *Heads High*.[5]

Beyond the works at issue in this litigation, Plaintiff Vegas has an ongoing relationship with Defendant V.P. Music, with respect to 37 recordings on which Vegas appears, and for which he has received royalties. (Chin Decl., Dkt. 43-2, ¶ 16.)

## II. Procedural History

On November 13, 2020, Plaintiffs filed the instant action alleging breach of contract, copyright infringement, unjust enrichment, and unfair competition. (Compl., Dkt. 1.) Defendants filed a letter motion for a pre-motion conference on August 9, 2021. (Dkt. 12.) The Court granted Defendants' request, and held a pre-motion conference on November 2, 2021. (08/30/2021 Docket Entry.) At the pre-motion conference, the Court granted Plaintiffs leave to amend the Complaint, and Defendants did not file a motion to dismiss at that time. (11/02/2021 Minute Entry.)

Plaintiffs filed their Amended Complaint on December 9, 2021. (Am. Compl., Dkt. 19.) On February 16, 2022, the Court denied Defendants' request for a premotion conference as

---

[4] Plaintiffs also submitted "PA" or "Performing Arts" copyrights, which Plaintiffs explained are copyrights for lyrics or sheet music. These copyrights do not cover the songs that are the subject of this dispute.

[5] The parties agreed that, with respect to Copyright No. SR 797-312, Plaintiffs are entitled to at most 50% of the profits generated by *Kill Har Wid Di No*, because the holder of the producer's copyright would be entitled to the remaining 50%.

4

unnecessary, and ordered the parties to brief Defendants' motion to dismiss. (2/16/2022 Docket Entry.) The parties finished briefing Defendants' motion to dismiss on April 29, 2022. (*See* Dkts. 31–36.)

On August 1, 2022, Plaintiffs filed the instant motion seeking a preliminary injunction to enjoin Defendants "from using [Mr. Vegas's] sound, image and likeness during the pendency of this action," or in the alternative, seeking a court order requiring Defendants "to hold money derived from Vegas['s] music[,] image[,] and likeness in escrow as a fiduciary." (Pls. Aff., Dkt. 41-1, at 5; *see also* Pl. Rep., Dkt. 46, at ECF 4.) The Court held a show-cause hearing on October 27, 2022. (*See* 10/27/2022 Minute Entry.) At the hearing, the Court denied the preliminary injunction and noted that a written decision would follow. For the reasons explained below, Plaintiffs' motion is denied in its entirety.

## DISCUSSION

### I. Legal Standards

"[A] preliminary injunction is 'an extraordinary remedy never awarded as of right.'" *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018) (quoting *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008)). "A party seeking a preliminary injunction must demonstrate: (1) a likelihood of success on the merits[]; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction." *Khan v. Addy's BBQ LLC*, 419 F. Supp. 3d 538, 552 (E.D.N.Y. 2019) (quoting *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015)); *see also Salinger v. Colting*, 607 F.3d 68, 75 (2d Cir. 2010). "The purpose of such interim equitable relief is not to conclusively determine the rights of the parties, . . . but to balance the equities as the litigation moves forward." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (citations omitted); *see also Am. Civil Liberties Union v.*

*Clapper*, 804 F.3d 617, 622 (2d Cir. 2015) ("A preliminary injunction is an equitable remedy and an act of discretion by the court.").

"Courts refer to preliminary injunctions as [either] prohibitory or mandatory." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 36 (2d Cir. 2018). While a "[p]rohibitory injunction[] maintain[s] the status quo pending resolution of the case[,] [a] mandatory injunction[ ] alter[s] it." *Id.* at 36–37 (citation omitted). The status quo in the context of a preliminary injunction is "the last actual, peaceable uncontested status which preceded the pending controversy." *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014) (*per curiam*) (internal quotation and citation omitted). A party moving for a mandatory injunction, or an injunction that "will provide the movant with substantially all the relief sought and relief that cannot be undone even if the defendant prevails at a trial on the merits" must satisfy a heightened legal standard and both: "(1) make a strong showing of irreparable harm, and (2) demonstrate a clear or substantial likelihood of success on the merits." *Yang v. Kosinski*, 960 F.3d 119, 127–28 (2d Cir. 2020) (internal quotation and footnotes omitted).

The Court finds that Plaintiffs are seeking a mandatory preliminary injunction because the preliminary injunction motion seeks to alter the status quo, by requesting that Defendants be prohibited from using Mr. Vegas's "sound, image[,] and likeness during the pendency of this action." (*See* Pls. Aff., Dkt. 41-1, at 5.) "The Court thus applies the 'heightened legal standard' appropriate for evaluating a mandatory preliminary injunction." *Int'l Home Care Servs. of N.Y., LLC v. People's United Bank, Nat'l Ass'n*, No. 20-CV-3358 (PKC) (SJB), 2020 WL 5752187, at *4 (quoting *N. Am. Soccer League, LLC*, 883 F.3d at 37).[6]

---

[6] However, "regardless of how the preliminary injunction is characterized, [Plaintiffs] ha[ve] failed to make a showing of irreparable harm—a prerequisite to injunctive relief under the

6

Here, Plaintiffs' application for relief is based only upon the alleged unlawful infringement upon his copyrights, and not upon any other claim asserted in the Amended Complaint. (*See generally* Pls. Aff., Dkt. 41-1.)

## II.     Plaintiffs' Deficient Papers

As a threshold matter, the Court addresses Defendants' argument that the motion for preliminary injunction be denied because Plaintiffs failed to adhere to this District's Local Rules, pursuant to which Plaintiffs should have filed a "memorandum of law" and "affidavits and exhibits" supporting their motion. (*See* Defendants' Memorandum of Law in Opposition ("Defs. Opp."), Dkt. 42, at 3–4); *see also* Local Rule 7.1(a)(2)(3).). These components are requirements of filing a motion, except "as otherwise permitted by" district courts. Local Rule 7.1(a). Defendants are correct that non-compliance with the Local Rules is sufficient grounds to deny the preliminary injunction. *See Nat'l Coal. of Prop. Owners & Managers v. Reliance Ins. Co. of Ill.*, No. 00-CV-8554 (LMM), 2001 WL 99873, at *1 (S.D.N.Y. Feb. 5, 2001) (denying a preliminary injunction "without prejudice to renew[] on appropriate papers" where plaintiff failed to make the application "on formal motions papers, supported by one or more affidavits demonstrating that preliminary injunctive relief is warranted").

In this instance, the Court declines to dismiss the motion based on Plaintiffs' failure to comply with the Local Rules, and instead, will address the merits of the motion. That said, Plaintiffs' counsel is on notice that future filings must adhere to the Local Rules of this Court. "Local rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress or the Constitution." *Contino v. United States*, 535 F.3d 124, 126 (2d

---

legal standard for either a mandatory or prohibitory preliminary injunction." *Int'l Home Care Servs.*, 2020 WL 5752187, at *4 n.8.

7

Cir. 2008). Plaintiffs' counsel must familiarize themselves with the procedures of federal court in order to effectively represent their client in this action.[7]

### III. Plaintiffs Have Not Established Irreparable Harm

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 221 (E.D.N.Y. 2013) (alteration omitted) (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)). "[T]o show irreparable harm, the moving party must establish that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Int'l Home Care Servs.*, 2020 WL 5752187, at *4 (internal quotation marks omitted). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005). Therefore, a "monetary loss will not suffice" to demonstrate irreparable harm "unless the movant provides evidence of damages that cannot be rectified by financial compensation." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1998).

"[L]oss of reputation, goodwill, and business opportunities" can constitute irreparable harm. *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) (cleaned up). Goodwill is defined as the "expectancy of continued patronage[.]" *Singas Famous Pizza Brands Corp. v. N.Y. Adver. LLC*, No. 10-CV-8976 (RJH), 2011 WL 497978, at *6 (S.D.N.Y. Feb. 10, 2011), *aff'd*,

---

[7] The Court further notes that in their preliminary motion papers, Plaintiffs cite numerous times to intermediate state court decisions for legal standards that are inapposite here. (*See* Pls. Aff., Dkt. 41-1, ¶ 18.) Plaintiffs are reminded that "decisions of a state's intermediate and lower courts are not binding on the federal courts." *See Kassim v. CVS Albany, LLC*, No. 21-CV-2927 (PKC) (TAM), 2022 WL 4357456, at *7 (E.D.N.Y. Sept. 20, 2022) (internal citations omitted).

468 F. App'x. 43 (2d Cir. 2012); *see also Nat'l Elevator Cab & Door Corp. v. H & B, Inc.*, No. 07-CV-1562 (ERK) (RML), 2008 WL 207843, at *5 (E.D.N.Y. Jan. 24, 2008) (noting that goodwill "typically includes not only the likelihood that customers will return to the old place of business, but the competitive advantage of an established business"), *aff'd*, 282 F. App'x. 885 (2d Cir. 2008). However, "conclusory statements of loss of reputation and goodwill constitute an insufficient basis for a finding of irreparable harm." *Singas*, 2011 WL 497978, at *6 (internal quotation and citation omitted).

When determining whether a moving party faces irreparable harm without a preliminary injunction, district courts "should generally consider [any] delay" on the movant's part in seeking the injunctive relief. *Silber v. Barbara's Bakery, Inc.*, 950 F. Supp. 2d 432, 439 (E.D.N.Y. 2013) (citing *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 39 (2d Cir. 1995)). Such delays undermine the theory justifying preliminary injunctions, namely "that there is an urgent need for speedy action to protect the plaintiff's rights." *Central Point Software, Inc. v. Glob. Software & Accessories, Inc.*, 859 F. Supp. 640, 644–45 (E.D.N.Y. 1994). Although a delay in seeking a preliminary injunction "does not always undermine an alleged need for preliminary relief, months-long delays in seeking preliminary injunctions have repeatedly been held by courts in the Second Circuit to undercut the sense of urgency accompanying a motion for preliminary relief." *Silber*, 950 F. Supp. 2d at 439. In the context of trademark or copyright infringement cases, courts may overlook delay in seeking preliminary injunctive relief if the dilatory moving party "offer[s] any persuasive justification for its delays, 'such as ignorance regarding defendants' alleged infringement, good-faith attempts to investigate that infringement, and diligent pursuit of settlement negotiations.'" *Two Hands IP LLC v. Two Hands America, Inc.*, 563 F. Supp. 3d 290,

300 (S.D.N.Y. 2021) (quoting *Goat Fashion Ltd. v. 1661 Inc.*, No. 19-CV-11045 (PAE), 2020 WL 5758917, at *5–6 (S.D.N.Y. Sept. 28, 2020)).

Here, Plaintiffs moved for a preliminary injunction in August 2022, about 21 months after initiating their lawsuit in November 2020.  Although Defendants raised Plaintiffs' delay in seeking an injunction in their opposition papers (*see* Defs. Opp., Dkt. 42, at 11–12), Plaintiffs have offered no rebuttal or explanation in their motion papers as to why they waited so long before seeking preliminary injunctive relief (*see generally* Pl. Rep., Dkt. 46).  The only "persuasive justification for [the] delays" that the Court can conceive of, *see Two Hands IP LLC*, 563 F. Supp. 3d at 300, is that Plaintiffs were engaged in settlement negotiations with Defendants, as the parties engaged in several rounds of mediation.  (*See* Dkt. 11; *see also* 12/16/2021 Minute Entry and Order.)  However, the Court cannot conclude that Plaintiffs' delay is attributable to settlement negotiations that were pursued diligently or in good faith, given that Plaintiffs filed this preliminary injunction motion right before a settlement conference was scheduled before the Honorable Marcia M. Henry, the Magistrate Judge in this case.  (*See* Dkt. 39; *see also* 7/19/2022 Minute Entry and Order.)

Beyond the unexplained delay in seeking an injunction, Plaintiffs have failed to show irreparable harm insofar as they have not shown why any harm they suffered could not be remedied by monetary damages.  Plaintiffs claim that Mr. Vegas is harmed by Defendants' continued use of "his music, image, and likeness" because it creates competition with Mr. Vegas's "own music and impacts his reputation and goodwill in the community," but they offered no explanation for how his reputation and goodwill have been negatively impacted.  (*See* Pl. Rep., Dkt. 46, ¶ 8.)  These "conclusory statements of loss of [goodwill or] reputation will not justify an irreparable harm finding." *Home It, Inc. v. Wupin Wen*, No. 19-CV-7070 (PKC) (VMS), 2019 WL 7168370, at *2 (E.D.N.Y. Dec. 23, 2019) (quoting *Alzheimer's Found. of Am. v. Alzheimer's Disease & Related*

*Disorders Ass'n, Inc.*, No. 10-CV-3314 (RWS), 2015 WL 4033019, at *11 (S.D.N.Y. June 29, 2015)).

Similarly, at the show-cause hearing, Plaintiffs were unable to explain—despite repeated questioning from the Court—why any of the harm they alleged could not ultimately be remedied by damages if they were to prevail on the merits. In fact, Plaintiffs in their motion papers state that Mr. Vegas "has several reasons for wanting to control his image," but identify only one such reason: "financial gain." (*See* Pls. Aff., Dkt. 41-1, ¶ 16.) Courts in this Circuit have consistently held that allegations that a "defendant's [actions] created an economic disadvantage and an economic loss of sales" for a plaintiff are exactly the type of "monetary harm [that] can be rectified by financial compensation." *See Hammer v. Trendl*, No. 02-CV-2462 (MLO) (ADS), 2002 WL 32059751, at *2 (E.D.N.Y. Oct. 10, 2002), *report and recommendation adopted*, 2003 WL 2146686 (E.D.N.Y. Jan. 18, 2013); *cf. Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991) ("[W]hen a party can be fully compensated for financial loss by a money judgment, there is simply no compelling reason why the extraordinary equitable remedy of a preliminary injunction should be granted.").

At the hearing, Plaintiffs put forth a new theory that Mr. Vegas's reputation was being irreparably harmed because younger musicians who look up to him face the possibility of entering into agreements with Defendants, only to have their copyrights infringed by Defendants. This argument is unavailing for several reasons. First, reputational harm to the moving party because of potential infringement of third parties' copyrights at some point in the future is far too attenuated to constitute irreparable harm to the moving party. *See Kamerling*, 295 F.3d at 214 ("[I]rreparable harm must be shown to be actual and imminent, not remote or speculative."). Moreover, Mr. Vegas has brought this dispute with Defendants into the public forum by filing this lawsuit, and

11

given Mr. Vegas's status as a well-known musician, any aspiring artists can quickly educate themselves of the risks—real or perceived—of working with Defendants. Lastly, it is unclear to the Court how the preliminary injunction that Plaintiffs seek would impact Defendants' relationship with any other musicians. In other words, even if the Court were to grant the preliminary injunction requested by Plaintiffs, it would not address this theory of reputational harm that Plaintiffs put forth for the first time during the show-cause hearing.

Accordingly, because Plaintiffs have failed to show why monetary damages are not "an adequate remedy at law" for the alleged harm they suffered, they have not met their burden of proving that they would suffer irreparable harm without an injunction. *See Moore*, 409 F.3d at 510.

## IV. Plaintiffs Have Not Demonstrated Likelihood of Success[8]

"To establish a likelihood of success on the merits, a plaintiff 'need not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent.'" *Broker Genius, Inc. v. Volpone*, 313 F. Supp. 3d 484, 497 (S.D.N.Y. 2018) (quoting *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988)).

As explained on the record, the Court finds that Plaintiffs did not register copyrights for the disputed works before initiating this lawsuit. The only arguably relevant copyright that was

---

[8] Because of the priority of the irreparable harm showing, *see Elzanaty*, 929 F. Supp. 2d at 221 (explaining that "the moving party must show that injury is likely before the other requirements for an injunction will be considered"), and given the Court's finding, discussed *infra*, that Plaintiffs have not demonstrated irreparable harm, the Court "need not . . . resolve whether [Plaintiffs] ha[ve] a high likelihood of succeeding on the merits, whether [Plaintiffs] ha[ve] demonstrated a balance of hardships tipping decidedly in [their] favor, or whether the public interest would not be disserved by the granting of a preliminary injunction." *Int'l Home Care Servs.*, 2020 WL 5752187, at *6 n.14 (internal quotation marks omitted). However, as discussed *infra*, the Court further finds that, based on the evidence available at this stage of the proceeding, Plaintiffs have failed to demonstrate a likelihood of success with respect to their copyright infringement claim.

filed before November 2020 was the sound recording copyright for *Kill Har Wi Di No*. However, Defendants argue that this copyright does not cover *Heads High* because the songs are sufficiently distinct. At the hearing, Plaintiffs asserted that the copyright for *Kill Har Wi Di No* covers *Heads High*, but did not present any evidence to that effect. Therefore, the Court cannot find that Plaintiffs have met their burden to show that they are likely to succeed on the merits based on the copyright for *Kill Har Wi Di No*.

Furthermore, the Court disagrees with Plaintiffs that copyrights registered after the complaint was filed but before they amended the complaint can sustain their copyright infringement claim. It is true that "an amended pleading will 'ordinarily supersede the original and renders it of no legal effect.'" *Brown v. City University of N.Y.*, No. 21-CV-854 (PKC) (TAM), 2022 WL 4637818, at *2 n.2 (E.D.N.Y. Sept. 30, 2022) (quoting *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000) (brackets omitted)). However, amending the complaint is not a workaround to the statutory requirement in the Copyright Act that "no civil action for infringement of copyright in any United States work shall be instituted until . . . registration of the copyright claim[.]" 17 U.S.C. § 411(a). Courts in this Circuit—including this Court—have routinely rejected the argument advanced by Plaintiffs that amending the complaint can cure a failure to register a copyright before initiating a copyright infringement lawsuit. *See, e.g.*, *Malibu Media, LLC v. Doe*, No. 18-CV-10956 (JMF), 2019 WL 1454317, at *1 (S.D.N.Y. Apr. 2, 2019) (holding that "a prematurely filed suit must be dismissed notwithstanding a plaintiff's post-registration amendment"); *Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 205 (S.D.N.Y. 2019) (dismissing complaint on similar grounds); *Xclusive-Lee, Inc. v. Hadid*, No. 19-CV-520 (PKC) (CLP), 2019 WL 3281013, at *4 (E.D.N.Y. July 18, 2019) (not granting leave to amend complaint because amendment cannot remedy plaintiff's failure to comply with statutory

requirements of registering copyright prior to filing lawsuit). Plaintiffs have not pointed to any legal authority to the contrary, and the Court sees no reason that would distinguish this action from the cases mentioned above.

One exception to registering the copyright with the United States Copyright Office prior to commencing this lawsuit is if Plaintiffs' copyright was registered in another country. *See DigitAlb, Sh.a. v. Setplex, LLC*, 284 F. Supp. 3d 547, 554–55 (S.D.N.Y. 2018) ("[N]on-United States works—generally, works first published outside the United States in a foreign country that is a signatory to the Berne Convention—are exempt from registration."); *The Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 633 F. Supp. 2d 159, 162 (S.D.N.Y. 2009) ("Section 411(a) of the [Copyright] Act, which requires preregistration or registration before any copyright infringement suit may be brought, is limited to U.S. works[.]").

Although Plaintiffs have alluded to holding copyrights for the disputed works in Jamaica, they did not produce evidence either in their motion papers or at the show-cause hearing of such Jamaican copyrights. While the Court would be obligated in a motion to dismiss to draw all reasonable inferences in Plaintiffs' favor, in a motion for a preliminary injunction the Court cannot assume that Plaintiffs do, in fact, hold these copyrights in Jamaica. *See Aqua Harvesters, Inc. v. N.Y.S. Dep't of Env. Conservation*, No. 17-CV-1198 (ERK), 2021 WL 2351039, at *1 (E.D.N.Y. June 9, 2021) (recognizing "of course, that a plaintiff bears a 'heavier burden' to obtain a preliminary injunction than it does in order to state claim upon which relief may be granted"); *see also New Hope Family Servs., Inc. v. Poole*, 966 F.3d 145, 165 (2d Cir. 2020) (noting that movant's burden in demonstrating a reasonable likelihood of success for preliminary injunction purposes is "a heavier burden than [plaintiff] bears in pleading the plausible claim necessary to avoid dismissal"). Because Plaintiffs acknowledged that they only completed registration of the U.S.

copyrights as of December 9, 2021, but have not produced any evidence of Jamaican copyrights, the Court finds that Plaintiffs have failed to demonstrate a likelihood of success on the merits for the copyright claim.[9]

## V. No Other Bases for Preliminary Injunction

In their motion papers, Plaintiffs assert that "[i]n addition to infringing on Vegas'[s] copyrights[,] . . . [Defendants] invaded his right to publicity . . . and continued to use Vegas'[s] image, likeness[,] and other indicia of identity to his detriment and without an endorsement deal during the pendency of this action." (*See* Pls. Aff., Dkt. 41-1, ¶ 15.) At the show-cause hearing, Plaintiffs repeated this assertion of infringement of publicity rights as a basis for the preliminary injunction application.

However, "preliminary relief cannot be granted on a claim not alleged in the [amended] complaint." *Nat'l Coal. of Prop. Owners & Managers*, 2001 WL 99873, at *1. Here, Plaintiffs did not assert a separate claim of infringement based on Mr. Vegas's publicity right, which is typically a state common law tort claim or statutory claim in New York. *See Cummings v. Soul Train Holdings LLC*, 67 F. Supp. 3d 599, 602 (S.D.N.Y. 2014); *see also In re Jackson*, 972 F.3d 25, 33–35 (2d Cir. 2020).

---

[9] Plaintiffs' other argument on the likelihood-of-success prong is that "this action survived [Defendants'] first dispositive motion attempt." (Pls. Aff., Dkt. 41-1, ¶ 12.) This is a gross misrepresentation of the procedural history of this action, and such a frivolous argument that the Court only addresses it in this footnote. In August 2021, Defendants filed a request for a pre-motion conference. (Dkt. 12.) That pre-motion conference was held on November 2, 2021, and during that conference the Court granted Plaintiffs' request to amend their Complaint. (11/2/2021 Minute Entry.) Defendants thus never moved to dismiss the original Complaint, and it is disingenuous for Plaintiffs to claim that they "survived" a motion to dismiss that was never filed.

The Court further notes that Plaintiffs in their motion papers and in the show-cause order presented no argument that a preliminary injunction would favor the public interest, nor any argument on the balance of hardships.

Plaintiffs also claimed at the show-cause hearing that Defendants engaged in acts of retaliation after the filing of the preliminary injunction motion, by forbidding Mr. Vegas from recording covers of some of his songs. However, as the Court noted on the record, Plaintiffs did not present any evidence in the form of witnesses, documents, or affidavits regarding such allegedly retaliatory actions. Without any evidence, the Court cannot grant extraordinary relief based only on the assertion of Plaintiffs' counsel.[10]

## VI. Escrow

Finally, Plaintiffs request that this Court order Defendants "to hold money derived from Vegas['s] music[,] image[,] and likeness in escrow as a fiduciary." (Pls. Aff., Dkt. 41-1, at 5; Pl. Rep., Dkt. 46, at 4.) Plaintiffs assert that placing these funds in escrow "would protect Vegas from Defendants use of their manpower to posture for dismissals" (Pl. Rep., Dkt. 46, ¶ 8), and that "[i]t is against equity and good conscience to allow VP to continue reaping where Vegas has sown and gathering where he has strewn" (Pls. Aff., Dkt. 41-1, ¶ 18). Plaintiffs apparently believe an escrow order is needed to balance the playing field between the parties, in light of the disparity in resources.

However, Plaintiffs have not cited any case law or presented any cogent argument on why an escrow order is necessary and appropriate in this case. Instead, Plaintiffs state in conclusory fashion in their motion papers that Defendants "would not be prejudiced by holding monies derived from [Plaintiff] Vegas in escrow" (Pls. Aff., Dkt. 41-1, ¶ 14), which only underscores Plaintiffs' apparent misunderstanding that they bear the burden of proof in this proceeding for a preliminary injunction, even when seeking an order for this Court to place funds in escrow. But

---

[10] The Court also notes that because Plaintiffs have presented no evidence with respect to these allegedly retaliatory actions, the Court is unable to determine whether such actions related to the disputed works in this action, or to other works for which Defendants hold copyrights.

as the Court explained at the hearing, placing disputed funds into escrow would be appropriate if there were any evidence that Defendants would be unable to satisfy a monetary judgment against them if Plaintiffs ultimately prevail on the merits in this case. But Plaintiffs have offered no such evidence, nor is there any in the record. The Court therefore finds that Plaintiffs have fallen well short of meeting their burden as to the requested escrow order.

## CONCLUSION

For the reasons stated on the record at the show-cause hearing, and explained in further detail herein, the Court denies Plaintiffs' request for a preliminary injunction in its entirety.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: January 27, 2023
       Brooklyn, New York